**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**GERALD LEPINSKE, JR.,**

        **Plaintiff,**

**-vs-**                                                  **Case No. 6:07-cv-915-Orl-31DAB**

**MERCEDES HOMES, INC., HOWARD**
**BUESCHER, KEITH BUESCHER,**

        **Defendants.**

## ORDER

This matter comes before the Court on the Joint Motion to Approve Settlement (Doc. 46).[1] The "Joint Stipulation and Settlement Agreement" (henceforth, the "Agreement") (Doc. 54-2), arises from negotiations between the parties to the following cases:

    6:07-cv-0915-GAP-DAB    Lepinske v. Mercedes Homes, Inc.

    6:07-cv-787-GAP-KRS     Day v. Mercedes Homes, Inc.

    6:07-cv-1038-GAP-DAB    Carter v. Mercedes Homes, Inc.

    6:07-cv-1150-GAP-UAM   Connolly v. Mercedes Homes, Inc.

*Lepinske*, only, was pled as a class action. All four suits arise from allegations that Mercedes Homes, Inc. ("Mercedes") failed to pay the required time-and-a-half to employees who worked in excess of forty hours per week, as required by the Fair Labor Standards Act ("FLSA").

---

[1] In addition to seeking approval of the settlement, the Joint Motion to Approve Settlement originally sought *in camera* review and confidentiality in regard to the settlement, which the Court denied (Doc. 51). The parties then waived the confidentiality and *in camera* review requirements and sought reconsideration (Doc. 54), which the Court granted (Doc. 56).

Mercedes (and, in the *Lepinske* case, its co-defendants, Howard and Keith Buescher) argue that the Plaintiffs were exempt from the requirements of the FLSA and therefore were not entitled to overtime pay. In each case, the Plaintiffs were represented by counsel.

The Court conducted a hearing on March 6, 2008 and requested additional information about the calculations in the Agreement, which the parties provided shortly thereafter (Doc. 59). The Court had additional concerns (Doc. 61) about the contents of the proposed Class Notice and the proposed Claim Form, which the parties addressed on May 5, 2008 (Doc. 65).

**II.      Standards**

   A.      FLSA Settlements

Congress enacted the FLSA to protect workers from substandard wages and excessive hours that can result from the inequality in bargaining power between employers and employees. *Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697, 706, 65 S.C. 895, 89 L.Ed. 1296 (1945). The FLSA, therefore, provides that "[any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee … affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, except in two narrow circumstances, generally are not subject to bargaining, waiver, or modification by contract or settlement. *Brooklyn Savings Bank*, 324 U.S. at 706. The two circumstances in which FLSA claims may be compromised are claims that are (1) supervised by the Secretary of Labor pursuant to 29 U.S.C. § 216(c) and (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir.1982).

Settlements are permitted in the latter context in part because initiation of the action by the employees provides some assurance of an adversarial context. *Id.*. at 1354. "The employees are likely to be represented by an attorney who can protect their rights [and] the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* To insure that the context was, in fact, adversarial, before a district court may approve a settlement, it must scrutinize the agreement to determine whether it is a fair and reasonable resolution of a bona fide dispute. *Id.* at 1353. If the settlement reflects a reasonable compromise over issues – such as FLSA coverage or computation of back wages – that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

B.   <u>FLSA Attorneys' Fees</u>

According to the axiomatic American Rule, all parties are to bear their own costs in litigation. *See, e.g.*, *Alyeska Pipeline Service Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S.C. 1612, 44 LED.2d 141 (1975). One of the recognized exceptions to the American Rule is the "common fund" case. Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval. *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F,2d 768, 771 (11th Cir. 1991). The common fund exception "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.C. 745, 749, 62 LED.2d 676 (1980). The exception can apply even where the parties agree that any unclaimed portion of the common fund will revert to the party that established it. *See Camden* at 771 n.2.

In collective FLSA actions, the court has a duty to determine the reasonableness of the proposed attorneys' fees as part of the fairness determination. *See*, *e.g.*, *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 849-50 (5th Cir.1998). Within this circuit, the district court has great latitude in formulating attorney's fee awards, subject only to the necessity of explaining its reasoning so the appellate court can undertake proper review. *Waters v. Intern. Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999).

**III.    Analysis**

**A.    Financial Terms**

The Agreement is based on the certification of a collective action involving all of the FLSA claims asserted in the four suits listed above. As required by the FLSA, this would be an "opt-in" collective action, affecting only those individuals that affirmatively agree to participate in it. To settle these suits, Mercedes agrees to pay out up to $1.2 million – defined in the Agreement as the "Maximum Settlement Amount". "Administrative Costs," including up to $400,000 in attorney's fees and costs, plus costs of administration (estimated at $10,000), plus $77,864 in payments to the named plaintiffs in the four suits, would be deducted from the Maximum Settlement Amount before determining the amount any individual (other than the named plaintiffs) could receive. The remainder of the $1.2 million would be divided by the number of months worked by every member of the class to determine a "Unit Share." Each individual who decides to join the class action would receive a payout equal to this Unit Share times the number of months that person worked in the relevant position(s). Any portion of the $1.2 million that is not paid out would revert back to Mercedes.

### B.     Participants

The Agreement defines the "Class" as "the collective group of those individuals who were employed by Mercedes in the positions of Builder, Superintendent, Assistant Builder, Builder in Training, Builder 1, Junior Builder, and Senior Builder." Under the terms of the Agreement, each member of the Class who is issued a class notice becomes a member of the Settlement Class, and each member of the Settlement Class who timely returns a claim form becomes a "Participating Claimant." The operative portion of the Agreement is found at Section 2.7, titled "Releases," which provides as follows:

> Upon the Effective Date, the Plaintiffs, Opt-In Plaintiffs and each of the Participating Claimants shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished and discharged all Released Claims.

The Plaintiffs are the named Plaintiffs in each of the four suits; the Opt-In Plaintiffs are the individuals who have filed written consents to participate in this case. The Effective Date is the date on which the order approving the settlement becomes final, and the Judgment is the judgment of dismissal that this Court is to enter pursuant to the Agreement.

### C.     Claims released

The Agreement defines "Released Claims" as

> any and all claims, obligations, demands, actions, causes of action and liabilities against Mercedes Releasees[2] of whatever kind and nature, character and description, whether in law or equity, whether sounding in tort, contract, statute, or other applicable law, whether known or unknown, and whether anticipated or

---

[2] Mercedes Releasees is defined as Mercedes Homes, Inc. and a long list of affiliates and related entities and individuals, including Howard Buescher and Keith Buescher, defendants in the *Lepinske* case.

>unanticipated, including Unknown Claims[3] as defined below, demands, rights, liabilities and causes of action of every nature and description whatsoever by a Class Member relating to the claims asserted in the Lawsuit that accrued during the Class Period[4] through the Effective Date, for any type of relief, including without limitation claims for wages, premium pay, overtime pay, damages, unpaid amounts, penalties, liquidated damages, punitive damages, interest, attorney fees, litigation costs, restitution, or equitable relief, including the following categories of allegations: (a) any and all claims for the failure to pay wages and/or any type of overtime wages and/or b) any and all claims stemming from or based on the alleged misclassification as exempt employees, *i.e.*, employees who are exempt under federal and/or state law from the wage and hour requirements imposed on employees who do not qualify for any exemption, including without limitation the executive, administrative, or professional exemptions set forth in state and federal law.  The Released Claims include claims meeting the above definition under any and all applicable statutes, including without limitation the federal Fair Labor Standards Act and the Portal to Portal Act, and any applicable state laws, but do not include any vested employee retirement benefit.  In addition, as to Plaintiffs, including Michael Cuda, the Released Claims include a general release of claims in a separate form satisfactory to counsel.

More succinctly stated, the Released Claims consist of every potential claim possessed by a Class Member that is related to the claims asserted in the "Lawsuit" (the *Lepinske*, *Day*, *Carter*, and *Connolly* suits), so long as the claim accrued between January 1, 2005 and the date of the order approving the settlement.

## D.     Notice

The Agreement provides that Mercedes will administer the claims process and sets a deadline thirty days after the order approving the settlement becomes final for Mercedes to mail

---

[3] "Unknown Claims" is defined as any Released Claim which the person possesses but is unaware of at the time of the entry of judgment.

[4] "Class Period" is defined as the span from January 1, 2005 to the date of the order approving the settlement.

out the notices and claim forms.  To become Participating Claimants, Class Members must return the claim forms within ninety days of the date on which Mercedes mailed them out.

### E. Forms

With regard to the Class Notice of Settlement and Claim Form, the Court has already reviewed the documents and proposed a number of changes, most of which the parties have accepted.  (Doc. 65.)  The Court finds that only minor revisions are needed to secure approval for those documents.  Rather than reprint those documents in full, the Court will simply describe the needed alterations.  First, two minor edits: In the Class Notice of Settlement, the final sentence of the first paragraph of section "B" contains the term "Class Member," which should read "Class member," the term used in the rest of the document.  Second, in the final paragraph of Section II of the Claim Form, the language proposed by the parties is acceptable, but the bracketed and all-caps text inserted by the Court should be deleted.  The only other change needed is in paragraph 2 of Section C of the Class Notice of Settlement.  In place of the current first sentence of that paragraph, the Court would approve the following: "Based on Mercedes' records, it is estimated that each member of the Class who participates in this settlement will receive [**INSERT MONTHLY AMOUNT**] for each month (rounded up) he or she worked for Mercedes during the Class Period."

### F. Proposed Judgment

The parties have provided a judgment for the Court to enter upon approval of the settlement, providing for dismissal of the main action with prejudice, with the Court to retain jurisdiction to determine attorney's fees and costs.  The Court rarely utilizes proposed judgments, and this one refers to the parties' motion for *in camera* review and approval of the Agreement,

which is no longer operative. However, upon final approval of the settlement, the Court would enter a judgment that dismissed the action with prejudice while retaining jurisdiction as to fees and costs.

### G.     Attorneys' Fees

The Agreement sets aside $400,000 of the $1.2 million Maximum Settlement Amount for attorneys' fees. (Of course, any award of attorneys' fees is subject to Court approval, which has not yet been sought.) The Court recognizes that traditionally in cases such as the one at bar, counsel seek fees based on the size of the fund recovered for benefit of the class. And the Court is not necessarily averse to an attorney's fee award in the 33.33 percent range, so long as counsel properly support their motion for such an award.

However, given the somewhat unusual circumstances of an opt-in class action, the Court is inclined to find that the amount of funds dispersed for claims and for costs would provide a more appropriate gauge of the value of the attorneys' efforts than the size of the common fund itself. If all potential class members join in the settlement, those two measures would be the same. But to the extent that the deal struck by counsel for the plaintiffs proves unattractive to potential class members, who therefore opt to pursue any claim they might have individually, that shortcoming ought to be reflected in the ultimate award of fees. The same would likely hold true if counsel's efforts at providing notice to potential class members are not effective. To be sure, the Court has no reason to think that plaintiffs' counsel have fallen (or will fall) short in these areas, or any others. Nonetheless, in case this information affected the parties' decision to go forward with this settlement, the Court wanted to make its position clear.

**IV.    Conclusion**

After reviewing the underlying allegations and the terms of the Agreement, and based on the assurances of counsel that the settlement resolves a bona fide dispute, the Court is generally willing to approve the Agreement.  The fact that this is an opt-in settlement, and can only bind those employees who affirmatively agree to it, goes a long way toward overcoming the minor qualms the Court has with its terms.  As noted above, the Court finds that the financial arrangements, release language, and notice period are all acceptable, and the forms require only minor alterations to warrant approval.

In consideration of the foregoing, it is hereby

**ORDERED** that the Joint Stipulation and Settlement Agreement is **TENTATIVELY APPROVED**.  If the parties agree to the foregoing, including the required corrections and the starting point for an attorneys' fee award, the parties shall file a revised Class Notice of Settlement and a revised Claim Form, incorporating the edits described above, not more than ten days from the date of this order.[5]    Upon the filing of those revised forms, the Court will enter an order

---

[5]To secure approval of the settlement in the companion case of *Aguirre v. Mercedes Homes*, Case No. 6:07-cv-938-GAP-KRS, the parties should file a revised Class Notice of Settlement and a revised Claim Form, incorporating the changes made to those documents in this case.  Upon that filing, the Court will enter an order, similar to this one, approving the settlement, dismissing the case with prejudice and retaining jurisdiction to award fees and costs.

granting final approval of the settlement, dismissing the case with prejudice, and retaining jurisdiction to determine, upon proper motion, the award of attorney's fees and costs.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 7, 2008.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE